UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------- x
UNITED STATES OF AMERICA,

- against -  **MEMORANDUM AND ORDER**

06 CR 0181 (RJD)

CARMINE BAUDANZA, et al.

Defendants.
--------------------------------------------------------- x

DEARIE, District Judge.

In an unusual application, a convicted defendant is joined by one of his victims in moving the court to vacate or modify an order of restitution entered against the defendant, or deem his restitution obligation satisfied, pursuant to the terms of a post-sentence settlement agreement in state court between the defendant and the victim. The Court held a status conference on the application on November 26, 2013. (See ECF No. 426); (Conference Tr. 1). The Court writes now to answer the question of whether we have statutory authority and jurisdiction to grant the motion. We answer in the affirmative.

## BACKGROUND

On December 13, 2007, this Court entered a judgment of conviction against defendant Carmine Baudanza on one count of racketeering conspiracy in violation of 18 U.S.C. § 1962(d), the Racketeer Influenced and Corrupt Organizations Act ("RICO"). (J. 1, ECF No. 340). Pursuant to the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A ("MVRA"), the Court's sentence included an order of restitution in the amount of $106,515.50, to be borne jointly and severally with co-defendant Joseph Baudanza (Carmine Baudanza's brother). (J. 6). Although the judgment did not identify a payee, the United States Probation Department for the Eastern

District has subsequently identified two victims: Esther Salama and her son Martin. (Gov't Letter Opp'n 2, ECF No. 424); (Conference Tr. 3, ECF No. 430).

Esther Salama is a principal of Cesar's Bay Shopping Center, LLC ("Cesar's Bay"). Cesar's Bay owes approximately $450,000 to Carmine's Dream, Inc. through a default judgment entered by the Supreme Court of the State of New York, Kings County on November 16, 2010. As his name suggests, Carmine Baudanza is the principal of Carmine's Dream. In the New York state lawsuit, Carmine's Dream alleged that it made loans to Cesar's Bay, which defended on the grounds that the loans were actually investments. (Conference Tr. 5-7). The case proceeded through discovery and summary judgment motion practice. (Conference Tr. 5). Cesar's Bay concluded, wrongly, that it lacked assets to satisfy any judgment and therefore abandoned its defense before trial. (Conference Tr. 6). The Supreme Court entered a default judgment after Cesar's Bay did so, but not before conducting an inquest at which Carmine's Dream presented proof of its damages. (Conference Tr. 6).

At the recent hearing before the undersigned, the parties disputed whether the RICO conspiracy underlying Baudanza's judgment of conviction involved the same business debt litigated in the state court action. (Conference Tr. 15). The Court itself thought otherwise, as did counsel for Baudanza. (Conference Tr. 15). But our subsequent review of the criminal docket, Presentence Investigation Report ("PSR"), and sentencing transcript demonstrates that the same business debt is indeed at issue in both the federal and state cases. More specifically, Carmine and Joseph Baudanza were originally indicted as part of a racketeering conspiracy that involved wide-ranging securities fraud, what is colloquially known as a "pump-and-dump" scheme. (Indictment 5-11, ECF No. 1); (Superseding Information (S-1) 5-19, ECF No. 208). However, Carmine Baudanza was not charged with direct participation in that scheme; rather, the

2

Indictment charged Baudanza and his brother with extortion and conspiracy to commit extortion from "John Doe #10" and "Jane Doe #1" – now revealed to be Esther and Martin Salama. (See Indictment 49-52). Both Baudanza brothers ultimately pled guilty to an extortion conspiracy charge in the Superseding Information. (Superseding Information (S-1) 23-24). The PSR provides additional details that, when read alongside the parties' submissions and the sentencing transcript (ECF No. 368), indicate that the money Carmine and Joseph Baudanza extorted from the Salamas was part of the same underlying debt that Cesar's Bay now owes to Carmine's Dream pursuant to the state court's judgment.

In May 2011, after entry of the state court's approximately $450,000 judgment, Baudanza moved this Court to amend its judgment, arguing that the order directed him to make "payments to the same person who owes him the money from this Judgment." (Baudanza Letter Appl. 1, ECF No. 412). This is not the sort of application that typically gains traction under the MVRA, at least not when made solely by a defendant, and so the Court denied the application (Order, Jan. 20, 2012, ECF No. 415) for the reasons set forth in the government's opposition (Gov't Letter Opp'n, Dec. 12, 2011, ECF No. 414).

Now Baudanza has brought a similar application, asking the Court to either vacate or modify the judgment or otherwise deem restitution satisfied. This time Ms. Salama, represented by counsel, has joined in the application. Her outwardly surprising enthusiasm springs from a proposed deal between the parties to the New York state lawsuit that would satisfy the default judgment still hanging over her company, Cesar's Bay. As related in their joint application and confirmed at the subsequent hearing, Cesar's Bay eventually reconsidered its litigation position after entry of the default judgment in favor of Carmine's Dream, and moved the Supreme Court to vacate that judgment. We are advised that, pursuant the CPLR, the Supreme Court has

virtually no discretion to vacate that judgment. (Conference Tr. 9). Nevertheless, while the motion to vacate the judgment was pending, Carmine's Dream offered to resolve the matter on two central conditions: (1) Cesar's Bay would pay $75,000 to Carmine's Dream; and (2) Esther Salama would "waive" her right to receive restitution from the defendant and any other party (that is, both Joseph and Carmine Baudanza). In monetary terms, Carmine's Dream offered to surrender its approximately $450,000 judgment (excluding interest) in exchange for total consideration of approximately $180,000, a net benefit to Cesar's Bay of approximately $270,000. The settlement further provided that Ms. Salama would "cooperate to achieve the waiver" of Baudanza's restitution.

That is where the parties have run into trouble. Ms. Salama cannot "waive" Baudanza's obligation to pay court-ordered restitution. The order is treated as a lien in favor of the United States, and a victim has only limited authority to reassign her interest to the Crime Victims Fund. 18 U.S.C. §§ 3613(c), 3664(g)(2); See also Lavin v. United States, 299 F.3d 123, 127 (2d Cir. 2002); United States v. Johnson, 378 F.3d 230, 244 (2d Cir. 2004).

The government opposed the joint application by letter dated July 29, 2013. (Gov't Letter Opp'n, ECF No. 424). Baudanza and Ms. Salama replied shortly thereafter, in separate submissions. Ms. Salama's submission quite pointedly states that she – the victim, along with her son – will be "substantially harmed" if the Court does not grant her relief, noting that the default judgment continues to accrue interest and interferes with her efforts to enter into an "anticipated transaction" without posting substantial monies in escrow. At the hearing, Ms. Salama's attorneys clarified that Cesar's Bay has sold assets and has substantial monies being held in escrow, monies that will be distributed to its shareholders if and when the default judgment is vacated or satisfied. (Conference Tr. 9-10). Not surprisingly, Ms. Salama told the

Court that she is very much in favor of the arrangement. (Conference Tr. 17 ("I would much rather have the [$]250,000 . . . than the $100,000 that he is supposed to owe.")). She stands to suffer additional pecuniary harm if we do not afford relief and will be fully made whole if we do.[1]

We readily denied Baudanza's earlier motion, but these representations give the Court pause. Although restitution is punitive, see, e.g., Johnson, 378 F.3d at 244, the "primary and overarching" goal of restitution (in contrast to forfeiture) is the full compensation of victims. United States v. Pescatore, 637 F.3d 128, 138 (2d Cir. 2011) (quoting United States v. Boccagna, 450 F.3d 107, 115 (2d Cir. 2006)); See also United States v. Peters, 732 F.3d 93, 98-99 (2d Cir. 2013). After Ms. Salama sent us her letter, we asked the government to take a second look at the joint application; the government has maintained its opposition. (Gov't Letter Opp'n, Sep. 18, 2013, ECF No. 425). The Probation Department continues to oppose the application as well.

## ANALYSIS

We first address a preliminary issue: setting aside the propriety of revisiting the restitution order at this time, does the MVRA permit restitution to be made in the unorthodox manner proposed by Baudanza and Ms. Salama, rather than through monetary payment? Over the government's opposition, the Court concludes that it does.

The Court starts with the common observation that a civil settlement agreed to prior to sentencing cannot bind the Court when fashioning a restitution order under the MVRA or its

---

[1] Although it might have come across as impolitic, she might well have added that there is little chance of the government ever securing full cash compensation from Baudanza, despite the diligence with which the local United States Attorney's Office pursues these matters. See generally Judge William M. Acker, Jr., The Mandatory Victims Restitution Act is Unconstitutional, 64 Ala. L. Rev. 803, 832-834 (2013). While we express no opinion on Judge Acker's more colorfully expressed views, his observation that most victims never receive full compensation is, in the experience of this Court, all too accurate.

5

predecessor, the Victim and Witness Protection Act of 1982 ("VWPA"). See United States v. Stennis-Williams, 557 F.3d 927, 930-31 (8th Cir. 2009); United States v. Masek, 588 F.3d 1283, 1289-90 (10th Cir. 2009); United States v. Bearden, 274 F.3d 1031, 1041 (6th Cir. 2001); United States v. Karam, 201 F.3d 320, 329 (4th Cir. 2000) (so holding pursuant to the VWPA); United States v. Savoie, 985 F.2d 612, 619 (1st Cir. 1993) (so holding pursuant to the VWPA). Because the MVRA requires the district court to order full compensation, a private settlement consummated before sentencing can neither waive a defendant's restitution obligation nor cabin the value of restitution to whatever sum the parties negotiate in advance. See, e.g., United States v. Gallant, 537 F.3d 1202, 1250 (10th Cir. 2008) ("The MVRA requires the sentencing court to provide restitution to victims. . . . A private settlement cannot abrogate that language.") (citation omitted).

Yet the MVRA also provides that the court "may" order "in-kind payments," 18 U.S.C. § 3664(f)(3)(A), and further defines "in-kind payment" to include, inter alia, "services rendered to the victim or a person or organization other than the victim," so long as "the victim agrees." 18 U.S.C. § 3664(f)(4)(C). The government contends that Carmine's Dream's surrender of its hefty default judgment does not constitute a service, especially in light of the fact that the settlement also calls for Cesar's Bay to pay $75,000. At least in this context, however, we would not impose so strict a construction on the word "services," which in its broad sense simply refers to performance of a useful act that creates an intangible benefit. Black's Law Dictionary 1491 (9th ed. 2009). The default judgment has substantial value, and so we think Baudanza's agreement (as principal of Carmine's Dream) to surrender the judgment would constitute "services" to an "organization other than the victim" (i.e. Cesar's Bay). More importantly, the default judgment has value exceeding what the Court determined was the victims' total loss at sentencing, even

6

when one discounts the $75,000 paid to Carmine's Dream. Accordingly, the Court concludes that, if the default judgment against Cesar's Bay had been in effect at the time of sentencing, and if both victims had agreed to accept the surrender of that judgment as restitution for their own injuries, the Court would have had the power (though not the obligation) to enter a restitution order directing defendant to pay in-kind restitution through surrender of the judgment, rather than through monetary payment to the victims.

But that is only the first step in the analysis, because the Court is asked here to vacate or modify a sentence that has already been entered, or otherwise deem the restitution order satisfied. There is no provision of the MVRA that authorizes such relief in these circumstances. Restitution is part of a criminal sentence, and so the district court's jurisdiction to vacate or modify a restitution order once issued is quite limited. See United States v. Kyles, 601 F.3d 78, 83 (2d Cir. 2010) ("It is well-established that a district court may not alter an imposed sentence, except in narrow circumstances . . . ."). Although the MVRA provides the Court with continuing jurisdiction to modify the timing of payment, 18 U.S.C. § 3664(k), that section makes no express provision for altering the manner of payment. See United States v. Hamburger, 414 F. Supp. 2d 219, 227 (E.D.N.Y. 2006) (Glasser, J.) ("[The] MVRA does not clearly authorize this Court to modify the form of payments, as opposed to the payment schedule. . . ."). Similarly, although Section 3664(o) of the MVRA lists several mechanisms for correcting, modifying, amending, or adjusting an order of restitution, none of those are applicable here.

Section 3664(j)(2) is closer to the mark, but still inapt. That section provides as follows:

Any amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim in--

(A) any Federal civil proceeding; and

7

(B) any State civil proceeding, to the extent provided by the law of the State.

This provision thus requires setoffs for monies recovered as compensatory damages for the losses caused by the defendant's criminal conduct. See United States v. Nucci, 364 F.3d 419, 423 (2d Cir. 2004). It does not give the courts broader discretion to extinguish a restitution obligation after the fact pursuant to waivers or releases in a post-sentence settlement agreement. See United States v. May, 500 F. App'x 458, 463 (6th Cir. 2012) ("Allowing the terms of [a] private agreement to completely discharge [defendant's] restitution obligations would be completely contrary to our limited jurisdiction under 18 U.S.C. § 3664(j)(2) . . . .").

Here, as the government notes, the proposed settlement lacks mutuality with the restitution order; that is, the settlement calls for the relinquishment of a judgment debt held by Carmine's Dream against Cesar's Bay, not the payment of money by Baudanza to Ms. Salama as compensation for Baudanza's extortion. Read literally, then, the settlement does not constitute "compensatory damages" "recovered" for the "same loss" inflicted by Baudanza's extortion. The Court therefore cannot grant the motion pursuant to the mandatory setoff provision in Section 3664(j)(2).

Confronted with the strictures of the MVRA, Baudanza and Ms. Salama accuse the government of raising a "mechanical objection" that elevates "form over substance." Noting that the government's position would require the defendant to pay the $106,515.50 in restitution to the Clerk of Court, who would then tender it to Ms. Salama, who would then pay it back to the defendant's corporation, Ms. Salama protests that "there is no good reason to require the parties to restructure their completed settlement agreement to require a ministerial payment through the clerk of court." Considered as a practical proposal, the government's insistence on this triangular sequence of payment may not be objectively "good." But the government's reasoning

is in full accord with the language of the MVRA, which provides no express authority to grant the motion.

Nevertheless, in this unusual case, we conclude that such authority exists under the All Writs Act, 28 U.S.C. § 1651. Specifically, in aid of our jurisdiction as the sentencing Court, and to advance the MVRA's twin ends of compensation and punishment, the Court concludes that we may order a pre-existing restitution obligation to be deemed satisfied by the defendant's subsequent surrender of a default judgment, provided that such an order does not violate the central imperative of the MVRA – that the defendant provide compensation for the full amount of the victim's loss – and further provided that the victim's consent to accept the surrender of a default judgment is not the product of coercion or collusion.

As the Second Circuit has explained, "[t]he All Writs Act enables federal courts to 'issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.'" United States v. Catoggio, 698 F.3d 64, 67 (2d Cir. 2012) (quoting 28 U.S.C. § 1651(a)). "The broad power conferred by the All Writs Act is aimed at achieving 'the rational ends of law.'" Id. (quoting United States v. N.Y. Tel. Co., 434 U.S. 159, 172 (1977)) (internal quotation marks omitted). Yet the Court's power under the All Writs Act, though broad, is not unfettered. On the contrary, the Court must keep in mind the Act's limits:

> The All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute. Where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling. Although that Act empowers federal courts to fashion extraordinary remedies when the need arises, it does not authorize them to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate.

Pennsylvania Bureau of Corr. v. United States Marshals Serv., 474 U.S. 34, 43 (1985); See also United States v. Tablie, 166 F.3d 505, 506-07 (2d Cir. 1999) ("[T]he All Writs Act does not confer an independent basis of jurisdiction; it merely provides a tool courts need in cases over

9

which jurisdiction is conferred by some other source."). We had the power to fashion this form of restitution order at the time of sentencing, see supra pp. 6-7, and have jurisdiction as the sentencing court to modify the order, see supra pp. 7-8. But the retroactive remedy the defendant and victim seek is not expressly authorized by that grant of jurisdiction. And so we reach a difficult question: would an order deeming Baudanza's obligation satisfied constitute an appropriate remedial exercise of the All Writs Act in furtherance of our limited jurisdiction or an ad hoc writ issued in derogation of the MVRA?

The goals of the MVRA – its "rational ends," in the phrasing of the All Writs Act – have been described as both compensatory and punitive. Compare United States v. Zangari, 677 F.3d 86, 91 (2d Cir. 2012) ("[T]he purpose of restitution is essentially compensatory" (quoting United States v. Boccagna, 450 F.3d 107, 115 (2d Cir. 2006))) with Kelly v. Robinson, 479 U.S. 36, 52 (1986) ("Although restitution does resemble a judgment 'for the benefit of' the victim, the context in which it is imposed undermines that conclusion."). In service of these twin goals, the All Writs Act has been invoked to afford relief not contemplated by the text of the MVRA itself. For example, in Catoggio, 698 F.3d at 69, the Second Circuit relied on the All Writs Act in affirming this Court's pre-sentence restraint of the defendant's assets. Discussing a similar restraint in another case, the Second Circuit explained that "[t]he restraining order furthered the court's exercise of its jurisdiction over sentencing by ensuring that the defendant would have some assets available to satisfy the pending restitution order." Id. at 67.

Catoggio thus provides support for the general proposition that the Court may invoke the All Writs Act to afford relief that the MVRA does not specifically authorize in order to ensure that the victim is compensated and the defendant punished. However, we have not been directed to any authority considering the more specific question of whether a district court may apply the

All Writs Act to deem a restitution obligation satisfied in accordance with a private settlement agreement. The Sixth Circuit addressed a factually analogous situation in May, 500 F. App'x at 463, ruling in a non-precedential opinion that Sections 3664(o) and 3664(j)(2) of the MVRA did not permit such an order (a conclusion the Court shares, see supra pp. 8-9). Although the May court's analysis focused on the MVRA, not the All Writs Act, its reasoning extends beyond the language of the MVRA to consider its underlying goals in the factual context of a post-sentence settlement. That reasoning is therefore instructive when considering the limits of the All Writs Act in the context presented here.

In May, the district court originally imposed a $1,682,100 order of restitution on defendant, who had defrauded a bank. Id. at 459. Defendant had sued the bank prior to his indictment. Id. After sentencing, defendant entered into a settlement agreement in which the bank agreed to release defendant from a $2,357,870.80 judgment, which purportedly included his restitution obligation, in exchange for a payment of $100,000 and a release of all claims by the defendant against the bank. Id. at 459-60. Defendant then moved in the district court for an order deeming his restitution obligation satisfied. Id. at 460. The district court denied the motion based on the Sixth Circuit's earlier decision in Bearden, 274 F.3d at 1041, which had held that "a private settlement between a criminal wrongdoer and his victim releasing the wrongdoer from further liability does not preclude a district court from imposing a restitution order for the same underlying wrong." In affirming, the Sixth Circuit extended that reasoning to post-sentence settlements, explaining that:

> Restitution ordered as part of a criminal sentence is punitive, and even though it appears to be compensatory, "the context in which it is imposed undermines that conclusion." Further, we have made clear that "private individuals should not be allowed to thwart the penal goals of the criminal justice system by entering into releases or settlements with wrongdoers."

11

> May and First Financial, two private parties, entered into an agreement purporting to <u>absolve May of his restitution obligations ordered by the federal district court as part of his criminal sentence</u>. Allowing the terms of this private agreement to completely discharge May's restitution obligations would be completely contrary to our limited jurisdiction under 18 U.S.C. § 3664(j)(2) and our holding in <u>Bearden</u> and its progeny.

<u>May</u>, 500 F. App'x at 463 (citations omitted) (emphasis added).

Crucially, then, it is a settlement's attempt to absolve the defendant or discharge the obligation when defendant has only partially made good that puts such private settlements at cross-purposes with the MVRA. Ultimately, then, <u>May</u> and similar cases underscore what is, in the Court's view, the central imperative of the MVRA: that, in order to both punish the defendant and compensate the victim, the defendant <u>must</u> pay the victim the <u>full</u> amount of her losses. See also <u>Bearden</u>, 274 F.3d at 1041 ("It would be improper to permit private parties to release criminal wrongdoers from punishment"); <u>Karam</u>, 201 F.3d at 329 ("[T]he critical question is whether the victims have been <u>actually</u> compensated for losses caused by a defendant's criminal conduct"); <u>Savoie</u>, 985 F.2d at 619 ("Private parties cannot simply agree to waive the application of a criminal statute. . . . [T]he law will not tolerate privately negotiated end runs around the criminal justice system[.]") (citations omitted). Accordingly, when we ask whether the MVRA circumscribes the reach of the All Writs Act, the answer is yes. The All Writs Act cannot be invoked to issue relief that would absolve the defendant of his obligation to pay the victim's losses in full, and therefore cannot be invoked to deem an obligation satisfied pursuant to the terms of a private settlement that diminishes the value of the restitution order.

The proposed settlement between Baudanza and Mrs. Salama does not seek to waive the defendant's restitution obligation and does not diminish the actual losses. On the contrary, Baudanza proposes to surrender, through Carmine's Dream, a judgment with a face value well in excess of his restitution obligation, and his victims agree to accept such compensation. Our

determination that the courts have the power to fashion this admittedly unorthodox form of restitution as part of the original sentence, see supra pp. 7-8, further strengthens the Court's conclusion that we can grant this motion pursuant to the All Writs Act without subverting or circumventing the MVRA. Simply put, the parties are not asking the Court to let Baudanza off the hook, and we would not do so if they were. Accordingly, we hold that the All Writs Act grants the Court the authority to deem Baudanza's restitution order satisfied, although it does not require the Court to do so.

That conclusion brings the Court to what we facetiously referred to as the "400 pound gorilla in the room" (Conference Tr. 10): the possibility that a defendant might coerce a victim into a settlement or that a defendant and his victim might collude in a sham lawsuit. Where a settlement arises from coercion or collusion, relief is inappropriate, because the defendant has not truly been punished, nor has the victim been compensated. And the possibility of coercion is particularly acute where, as here, the defendant's conviction stems from his extortion of that same victim. Indeed, one might even take these observations a step further, reasoning that the possibility of coercion in these circumstances should preclude relief as a matter of law, even though the victim greatly desires relief. Certainly the Court cannot allow the exigencies of the present case to blind us to the wider potential for fraud and abuse inherent in negotiations between a convicted defendant and a victim. Still, rather than deny relief outright, we think the better course is for the Court to make the determination of whether the settlement was the result of coercion or collusion.

In the Court's view, the defendant and the victim have shown that the state lawsuit was genuine, that the default judgment was the result of an ill-advised but sincere tactical misstep, and that the state settlement was a good faith effort by experienced attorneys to resolve a

seemingly intractable problem. In addition, the settlement was entered into after conferencing with a state court justice, who evidently perceived the problem, determined that he could not vacate the judgment, and approved the proposed settlement as a way to resolve the matter.[2] (Conference Tr. 4-5, 9).

However, given the government's suggestion of "potentially suspicious circumstances," (Conference Tr. 11) we think it appropriate to afford the parties the opportunity for a hearing on that issue, as the Court noted at the last conference. (Conference Tr. 14). At a minimum, because 18 U.S.C. § 3664(f)(4)(C) requires the consent of the victims to any in-kind payment, Martin Salama must consent in writing. Should either party desire a hearing, that party shall advise the court in writing no later than March 12, 2014. Both parties will then exchange witness lists and advise the Court as to the expected length of the hearing, which the Court will then schedule. If no party desires a hearing, the Court will enter an appropriate order directing that the restitution obligation be deemed satisfied upon filing of proof with the Court that the state default judgment has marked satisfied in accordance with the underlying settlement.

---

[2] The Court does not suggest that any principle of comity requires us to follow the state court's lead, only that its imprimatur lends credence to the parties' assertions of good faith.

Finally, we note that, upon the request of Baudanza and Ms. Salama, we have treated this matter under seal because it partially discloses the contents of their settlement negotiations. We see no further reason to do so in light of the presumption of public access to materials submitted in aid of the Court's decision-making. See, e.g., Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119-20 (2d Cir. 2006). The Court intends to place the parties' submissions on the public docket, but we first invite the parties to file another letter setting forth what material, if any, should remain under seal or redacted. Should any party wish to do so, that party must file this letter no later than March 12, 2014.

SO ORDERED.

Dated: Brooklyn, New York
February 26, 2014

/s/ Judge Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge